UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANINE WEATHINGTON,                         Case No. 12-13573

                    Plaintiff,              John Corbett O'Meara
v.                                          United States District Judge

COUNTY OF WAYNE, et al.,                    Michael Hluchaniuk
                                            United States Magistrate Judge

                    Defendants.
_____/

## REPORT AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION (Dkt. 62)

**I.    Procedural History**

This is a prisoner civil rights action filed on August 13, 2012. (Dkt. 1). The

case was referred to Magistrate Judge Randon on August 21, 2012, for all pretrial

purposes.[1] (Dkt. 6). Plaintiff Janine Weathington filed an amended complaint on

May 9, 2014, alleging that she and other female inmates at the Wayne County Jail

were subjected to unreasonable, unlawful and unconstitutional strip searches in

violation of the Fourth Amendment.[2] (Dkt. 53 at ¶ 34-41). Plaintiff also raises

_____

    [1]  The matter was subsequently referred to the undersigned Magistrate Judge
on April 8, 2014. (Dkt. 51).

    [2]  On October 16, 2013, plaintiff filed a motion for class certification. (Dkt.
30). She filed an amended class certification motion on February 24, 2014. (Dkt.
45). The amended class certification motion was administratively closed on July
31, 2014, pending a determination on the instant motion.

two *Monell* challenges against Wayne County and the Wayne County Sheriff for unconstitutional policies, customs and practices, and for inadequate training and/or supervision of its agents and employees relating to the manner in which the strip searches were allegedly conducted.  (*Id*. at ¶¶ 42-52).

On July 10, 2014, Defendants County of Wayne, Benny N. Napoleon, Jeriel Heard, Corporal Darlene Oglesby, Corporal Arthur Elandt, Corporal Cyrs, and Officer Graham (collectively "defendants") moved for summary judgment on the amended complaint on the basis that plaintiff failed to file any grievances with the Wayne County Jail concerning the alleged activity, and thus failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.[3]  (Dkt. 62).  Plaintiff responded on July 31, 2014, arguing that (1) Wayne County's policies define plaintiff's claims as "nongrievable" and thus not subject to exhaustion under the PLRA, and (2) plaintiff nonetheless complied with Wayne County's grievance policy by filing four separate grievances regarding these activities at the Wayne County Jail.  (Dkt. 68, 68-1, 69).  Defendants filed their reply brief on August 18, 2014.  (Dkt. 71).

Due to the differences in the factual claims between the parties an evidentiary hearing was held on December 3, 2014, regarding the issues associated

---

[3]  Although defendants style their motion as one for summary judgment, this court, as discussed more fully herein, has treated the motion as an unenumerated Fed. R. Civ. P. 12(b) motion rather than one for summary judgment.

2

with the exhaustion question.  (Dkt. 85).

For the reasons that follow, the undersigned **RECOMMENDS** that defendants' motion (Dkt. 62), construed as an unenumerated Fed. R. Civ. P. 12(b) motion to dismiss, be **GRANTED**.

Because plaintiff has filed an amended motion to certify the class (Dkt. 45), and has identified other potential class members, the undersigned also **RECOMMENDS** that plaintiff be given 30 days from the date the District Court addresses this report and recommendation to amend the complaint and substitute a new class representative.  If this cannot be accomplished, the amended complaint will be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

## II.    Factual Background

Plaintiff alleges that during the time of her incarceration in the Wayne County jail, she was subjected to unreasonable, unlawful and unconstitutional strip searches.  (Dkt. 53, ¶¶ 15-16).  Plaintiff specifically alleges that female inmates were subjected to forced strip searches in the view of male guards and officers as well as dozens of other inmates.  (*Id*. at ¶¶ 17-18).  Plaintiff claims that she was subjected to "at least three" unreasonable strip searches between November 2011 and April 2012.  (*Id*. at ¶ 25).  Plaintiff alleges that she filed administrative grievances regarding the strip searches, thus exhausting her administrative

3

remedies.[4]  (*Id.* at ¶¶ 27, 30).  Plaintiff claims that defendants violated her Fourth

Amendment rights.  (*Id.* at ¶¶ 5-9).  She also raises two *Monell* claims against

Wayne County and the Wayne County Sheriff.  (*Id.*)

Defendants' motion focuses solely on the issue of exhaustion, namely that

plaintiff did not exhaust her administrative remedies and therefore her claims

should be dismissed.  However, in reply, defendants contend that the grievances

that plaintiff submitted in response to defendants' motion were never actually

submitted to the Wayne County Jail during the term of her incarceration, rather

they were only submitted for the purpose of this lawsuit.  (Dkt. 71, Def.'s Reply, at

2).  Moreover, defendants contend that plaintiff's argument that her claims are

"non-grievable" and thus not subject to the exhaustion requirements of the PLRA

is unfounded for two reasons.  First, defendants assert that plaintiff is not grieving

the "content" of any Wayne County Jail "Administrative Rules, Policy Directives,

Operating Procedures," as contemplated by § 7.1(B)(2)(b), and that the Wayne

County Jail grievance policy expressly permits inmates to grieve both

"policy/procedure violations" and "unsatisfactory conditions of confinement."

And, second, that plaintiff is not excused from filing a grievance under

---

[4] In response to defendants' motion for summary judgment, plaintiff attached what appears to be four grievances that she filed regarding the activities at the Wayne County Jail dated, November 22, 2011, November 30, 2011, December 1, 2011, and January 13, 2012, together with a signed affidavit.  (Dkt. 69).

§ 7.1(B)(2)(c), which requires that an inmate grieve something that is redressable individually (as opposed to grieving on behalf of other inmates). Plaintiff here complains of how she was treated individually and thus is not excused from complying with the grievance process.

During the evidentiary hearing on December 3, 2014, two witnesses were called to testify. The two witnesses were the plaintiff, Janine Weathington, and second, Charles Pappas, who was the director of internal compliance for the Wayne County Sheriff's Department. (Dkt. 85, p. 128). Mr. Pappas served in this capacity between June of 2012 and September of 2014, and was in charge of the Jail inmate grievance system. (*Id*.)

Ms. Weathington testified that she was currently housed with the Michigan Department of Corrections (MDOC) where she is serving a sentence for "multiple" criminal convictions and that she came to the MDOC on March 15, 2012, after transferring there from the Wayne County Jail. (Dkt. 85, p. 38). She was initially housed at the Division I unit of the Wayne County Jail where she filed the first of the four grievances relating to the strip search practices of the Jail. She transferred to the Division III unit of the Wayne County Jail, a completely different location than Divisions I and II, in November of 2011 where she filed three of the four grievances relating to strip search practices. (Dkt. 85, p. 106).

Plaintiff presented copies of three of the four grievances she stated she had

5

filed. The copies, according to her testimony, were handwritten duplicates of what she actually filed. (Dkt. 85, p. 41). She stated she could not make facsimile copies of the grievances because when she went to the law library the copy machine was not working and therefore she was forced to write out a duplicate copy. (Dkt. 85, p. 41). Plaintiff indicated that she never was asked any questions about these grievances by Jail staff and never received any response from the Jail. The copies she presented in court were kept by her while at the Jail and taken with her to the MDOC when she was transferred there in March of 2012. (Dkt. 85, p. 38).

Mr. Pappas testified that he was familiar with the records maintained by the Wayne County Jail, specifically the records of grievances filed, and that he had conducted a search of those records and could not find a record showing that plaintiff had filed a grievance regarding strip searches during her stay at the Jail between November of 2011 and March of 2012. (Dkt. 85, pp. 129-30). His search consisted of reviewing a spreadsheet log and manually reviewing thousands of paper documents. (*Id*.) He further stated that there were no practical limits on what a grievance could be based on and he noted that the policies on grievances differed from Division I/II and Division III of the Wayne County Jail. (Dkt. 85, p. 133). The grievance policy for Divison I/II did contain language that stated that "[i]ssues, which affect the entire population or a significant number of inmates"

are not grievable but Mr. Pappas testified that such language would not have resulted in a summary rejection of a grievance like the one plaintiff stated she filed on or about November 22, 2011, and he also stated he had never seen a grievance rejected under this provision of the grievance policy for Division I/II. (Dkt. 85, p. 145).

Mr. Pappas also testified that the Wayne County Jail keeps track of prisoner movement within the Jail and the records relating to plaintiff for the time she was an inmate between November of 2011 and March of 2012 show that she did not go the law library in either location. (Dkt. 85, p. 164). According to Mr. Pappas, plaintiff could not have taken anything other than the clothes on her back to the MDOC when she left the Wayne County Jail on March 15, 2012. *Id*. This limitation is imposed by the MDOC and would have prevented plaintiff from taking what she said were duplicate copies of the grievances as she testified. *Id*. Mr. Pappas concluded his testimony by stating that he did not believe that plaintiff had filed any grievances at the Wayne County Jail during late 2011 and early 2012. (Dkt. 85, p. 168).

## III.   Legal Analysis

### A.   Legal Standard

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at

532.  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure

to exhaust is an affirmative defense under the PLRA," and "inmates are not

required to specially plead or demonstrate exhaustion in their complaints." *Jones*,

549 U.S. at 216.  "Compliance with prison grievance procedures . . . is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress

has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms

of relief sought and offered through administrative avenues."  *Booth v. Churner*,

532 U.S. 731, 741 n. 6 (2001).  "[P]roper exhaustion of administrative remedies is

necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Brown v. Toombs*, 139 F.3d

1102 (6th Cir.), *cert. denied*, 525 U.S. 833, 119 S. Ct. 88, 142 L. Ed. 2d 69 (1998)

(No federal action shall be brought until such administrative remedies as are

available are exhausted).  In other words, a prisoner may not exhaust

administrative remedies during the pendency of the federal lawsuit.  *Larkins v.*

*Wilkinson*, 1998 WL 898870, at *2 (6th Cir. Dec. 7, 1998).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable grievance procedures and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

Here, defendants have moved for summary judgment on the issue of whether plaintiff failed to exhaust her administrative remedies under the PLRA. (Dkt. 62). However, as previously stated by a court in this district, summary judgment seems an inappropriate vehicle for adjudication because there is no determination on the merits of the case, and no "judgment" is entered. *See Neal v. Raddatz*, No. 09-13169, 2012 WL 488827, at *2 (E.D. Mich. Jan. 12, 2012). Instead, a number of courts have characterized a request to dismiss for failure to exhaust administrative remedies as "subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Id.* (quoting *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003); *see also Johnson v. Gregoire*, 2008 WL 5156428, *3 (W.D. Wash. 2008), citing *Ritza v. International*

9

*Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369 (9th Cir. 1988)

("finding that while no defense described in 12(b)(1) through (7) encompasses

failure to exhaust, federal courts traditionally have entertained certain pre-answer

motions not expressly provided for by rule, and authority to hear such motions lies

in federal court's inherent power to regulate actions pending before it"); *Thrasher*

*v. Garland L*, 2007 WL 3012615, *1-2 (W.D. Wash. 2007) ("The proper motion to

bring when asserting failure to exhaust administrative remedies . . . is an

unenumerated 12(b) motion. . . .").

    Based on the above, the *Raddatz* court determined that regardless of

whether the motion is treated as one for summary judgment or as an unenumerated

12(b) motion, the result is the same.  (*Id*. at 3).  If the court grants the motion, the

dismissal will be without prejudice and it will not count as a strike under 28

U.S.C. § 1915(g).  (*Id*.)  The court concluded, however, that the later approach,

adjudicating the motion as an unenumerated motion under 12(b) was more

consistent with the "true nature of the motion."[5]  (*Id*.)

    Although the Sixth Circuit has not addressed whether a plaintiff has a right

to a jury trial on the issue of exhaustion, six other circuit courts have addressed the

issue, and they have held that there is no right to a jury trial on exhaustion.  *See*

---

    [5]  The court also noted that there was no reason that the motion could not
simply be designated as a "motion to dismiss pursuant to 28 U.S.C. § 1997e(a)."

*Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011) (collecting cases).  Similarly, district courts in Michigan have addressed and extended *Messa's* holding.  *See Lee v. Willey*, 2014 WL 372652, at *2 (E.D. Mich. Feb. 3, 2014) (collecting cases holding that because the PLRA's exhaustion requirement is a tool courts use for judicial administration, that courts decide the issue, not juries).  The rationale behind a judge making a preliminary determination regarding exhaustion is that "[a] jury might decide the merits of a case that should never have gotten to the merits stage because the judge should have found that the prisoner had failed to exhaust his administrative remedies."  *See Smith v. Schwartz*, No. 10-721, 2012 WL 1600559, *3 (S.D. Ill. May 7, 2012) (quoting *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)).

Within the context of these evidentiary hearings, federal district or magistrate judges are able to resolve all genuine issues of material fact related to the exhaustion of administrative remedies.  *See Smith v. Schwartz*, No. 10-721, 2012 WL 1600559, *3 (S.D. Ill. May 7, 2012) (discussing Seventh Circuit procedure of a judge conducting evidentiary hearings (known as "*Pavey*" hearings) on exhaustion issue and permitting discovery relating to exhaustion).  At these types of hearings, judges are empowered to make credibility determinations and resolve factual disputes pertaining to exhaustion.  *Id.* (citing *Towns v. Holton*, 346 Fed. Appx. 97, 100 (7th Cir. 2009) (noting that credibility

11

findings based on demeanor made at an evidentiary hearing typically are owed
"great deference" by a reviewing court, and remanding a case to the district court
when the court merely accepted the defendants' exhaustion arguments without
making a credibility finding about a prisoner's testimony); *Hopes v. Mash*, No.
08–cv–713–DRH, 2010 WL 3490991, at *5 (S.D. Ill. Aug. 31, 2010) ( "*Pavey*
itself provides the authority for resolution of factual disputes by a court regarding
the issue of administrative exhaustion, if a hearing on the matter is conducted,
where the Court has the opportunity to hear witness testimony and consider
submitted evidence, in order to make such credibility determinations."); *Ellis v.
United States*, No. 08–cv–0628–DRH, 2010 WL 583913, at *6 (S.D. Ill. Feb.17,
2010) (stating that "credibility determinations are not prohibited" at a *Pavey*
hearing); *see also Hill v. Smith*, 136 Fed Appx 271, 274 (3d Cir. 2008) (review of
district court's "factual findings on exhaustion is for clear error, giving due regard
for the opportunity of the trial court to judge the credibility of the witnesses.").

In this case, the undersigned agreed that the exhaustion of administrative
remedies was a preliminary matter that should be determined by the court.  As
such, the court held an evidentiary hearing on December 3, 2014 to address the
parties' arguments regarding whether the issues raised by plaintiff were
"nongrievable" and exempt from the Wayne County Jail's Grievance Procedure,
or, if not, whether plaintiff exhausted her claims under that Grievance Procedure.

(Dkt. 85).

B.   <u>Wayne County Jail Operations Manual Grievance Procedures</u>

Plaintiff contends that her claims regarding strip searches are not subject to

exhaustion requirements because they are deemed "non-grievable" by the Wayne

County Jail.  (Dkt. 91, Pg ID 1896-1906).

The Wayne County Jail Operations Manual Grievance Procedure defines

"grievable issues" as:

> a.   Policy/procedure violations.  An inmate may
> grieve operations only if the issue directly affects
> them and the Sheriff's Office, the Office of the
> County Executive, Jail Health Services and Mental
> Health Services has control over the issue.
>
> b.   Unsatisfactory conditions of confinement, which
> directly affects the inmate.
>
> c.   An allegation of misidentification of the inmate at
> the time of arrest by the arresting law enforcement
> agency and the inmate is not the defendant
> identified in the warrant issued by a court of
> competent jurisdiction.

(Dkt. 62-3, § 7.1(B)(1)).  The Manual further defines "non-grievable" issues as:

> a.   Decisions in major/minor discipline hearings are
> appealable to the Director of Jails for review and
> final disposition.
>
> b.   Content of Administrative Rules, Policy
> Directives, Operating Procedures.
>
> c.   Issues, which affect the entire population or a

13

> significant number of inmates. (example: the
> content of the menu served to the entire population
> is not grievable, but the grievant's individual
> inmate's meal is grievable, if a special diet is
> denied).

(Dkt. 62-3, § 7.1(B)(2)).

    C.   <u>Analysis</u>

        1.   § 7.1(B)(2)(b)

While plaintiff complains about the manner in which strip searches were conducted while she was housed at the Wayne County Jail, plaintiff has not identified the "[c]ontent of [any] Administrative Rule[], Policy Directive[], [or] Operating Procedure[]" she complains about.  Indeed, as defendants point out, the Jail did maintain policies regarding conducting strip searches, which state that "[w]hen possible, conduct the search out of view of the public and other inmates." (WCSO 006486, Procedure(s) 3.1.17 1(c)(2)).  As defendants note, at best, plaintiff complains that defendants did not follow this policy by strip searching her in front of other individuals (a grievable issue as defined in the Manual § 7.1(B)(1)(a)).  But, plaintiff does not complain about the *content* of the policy or any other identified "Administrative Rule[], Policy Directive[], [or] Operating Procedure[]," and thus this court concludes that she does not fall within the "non-grievable" exception to policy/procedure violations.

To the extent that plaintiff is contending that conducting strip searches near

or in the presence of male officers or inmates is an unwritten "policy" of the

Wayne County Jail and thus not grievable under § 7.1(B)(2)(b), that argument

lacks merit. This court concludes that the wording of § 7.1(B)(2)(b) refers to

written "Administrative Rules, Policy Directives, Operating Procedures" and no

evidence in this record demonstrates otherwise. While plaintiff has perhaps

alleged a pattern of conduct on the part of defendants, that does not rise to the

level of being a policy that falls within the scope of § 7.1(B)(2)(b) which this court

determines to apply only to written rules, directives, or procedures.

2.    § 7.1(B)(2)(c)

Plaintiff also argues that the issue here is "non-grievable" because she says

the issue "affect[s] the entire population or a significant number of inmates."

(Dkt. 68, Pl.'s Resp. at 4). Plaintiff alleges that defendants are subjecting female

inmates to group strip searches and often in the presence of male officers, trustees,

and/or male inmates. (Dkt. 53, Amended Complaint ¶¶ 17, 18). However,

plaintiff also complains that she was subjected to "at least three unreasonable and

unconstitutional strip searches between November 2011 and April 2012." (*Id.*

¶ 25). And, she alleges that she did file grievances over these incidents while at

the Wayne County Jail. (*Id.* ¶ 27).

In support of her argument in this regard, plaintiff refers to a portion of the

testimony of Mr. Pappas wherein he states that the "proper conducting of the strip

search would not be grievable." (Dkt. 91, Pg ID 1900).  Viewed in context, this statement of Mr. Pappas does not support plaintiff's argument that the complaints that plaintiff has made here are non-grievable.  In context, Mr. Pappas was saying that the mere fact of a strip search is non-grievable but that a strip search conducted improperly is grievable.  It is clear that the grievances that plaintiff states she filed in this matter complain about more than the mere fact of a strip search and include such allegations as "sexual exploitation-harassment."  Mr. Pappas viewed the "lawsuit as [plaintiff] complaining about a personal issue as how she was affected by this strip search."  (Dkt. 85, p. 188). This court views the pleadings, and the wording of the alleged grievances, as alleging the "improper" execution of a strip search, not the proper execution, which could perhaps be viewed as non-grievable.

Plaintiff further contends that a directive issued after plaintiff had left the Jail supports her position as to whether the strip search issues are grievable.  This directive, Policy Directive DDJ1-13-14, dated Nov. 22, 2013 (Plaintiff's Exhibit 5), provides that strip searches should be conducted "out of view of the opposite gender."  Plaintiff argues that this directive seeks to "correct the improper conducting of the strip searches" as alleged by plaintiff.  (Dkt. 91, Pg ID 1900-01).

Mr. Pappas testified that he was not involved in the creation of this directive but viewed it as not being a "revision of the policy" but rather "reinforcing" the

existing policy as he understood it.  (Dkt. 85, pp. 191-92).

Plaintiff's argument that the strip searches she alleges took place are non-grievable is based on a reading of § 7.1(B)(2)(c), which would result in a situation where any injustice visited on an inmate at the Jail, that was also something experienced by a significant number of other inmates at the Jail, could not be grieved as a matter of policy.  Defendants respond to plaintiff's argument by contending that the language of § 7.1(B)(2)(c) must be read with other language of § 7.1, which specifically provides that a "grievance may be filed for alleged violations of civil rights or statutory laws, alleged violations of the Sheriff's Office policy, appeal a disciplinary decision, and alleged unsafe or unsanitary living conditions." § 7.1(A). (Dkt. 86-4, Pg ID 1737).  Under plaintiff's view of § 7.1(B)(2)(c), if the sewers backed up on an entire wing of the Jail an inmate on that wing could not file a grievance because that same problem impacted other inmates in the same wing of the Jail.  Such an interpretation is not logical.

Defendants also argue that the language of §7.1(B)(2)(c) should be interpreted to include the requirement that issues that affect the entire population cannot be grieved unless the issue directly affects the inmate personally.  (Dkt. 93, Pg ID 1932).  This argument is premised on the wording of § 7.1(B)(1)(a) and (b) which requires that grievances regarding operations and unsatisfactory conditions must directly affect the inmate.

17

While the specific wording of § 7.1(B)(2)(c) is not a model of clarity, this court declines to interpret it in such a way that it leads to an illogical conclusion. When these several sections of § 7.1 are read together, and considered along with the testimony of Mr. Pappas, issues that implicate civil rights violations of the nature as those alleged by plaintiff, are grievable under the Wayne County Jail Operations Manual as long as they affect the inmate personally who filed the grievance. Based on the above, this court finds that there was a valid grievance procedure available to plaintiff during the time she was an inmate at the Wayne County Jail and she would have needed to exhaust that remedy before filing the present complaint. Defendant's assert that § 7.1(B)(2)(c) does not apply to Division III because the grievance policies there are different. In light of the above ruling as to the significance of this section of the Jail policy, it is not necessary to determine whether it applies to both locations.

As an additional issue, defendants contend that plaintiff cannot escape her exhaustion requirement by arguing that attempts at exhaustion would be futile. Plaintiff actually denies that she is arguing futility as a basis of avoiding the exhaustion requirement. (Dkt. 91, Pg ID 1905). Moreover, it is clear that the futility of any grievance procedure does not excuse the exhaustion requirement. Court have held that an inmate cannot be excused from the grievance process by alleging that it would have been futile to file a grievance because the grievance

18

would have been denied as raising non-grievable issues.  *See Wilson v. Napolean*, 2012 WL 4849892, at *2 (E.D. Mich. Oct. 11, 2012) ("A prisoner cannot forego the grievance process altogether based on the belief that he would not be successful.  There is no futility exception to the exhaustion requirement.") (citing *Booth v. Churner*, 532 U.S. 731, 741 & n. 6 (2001)).  In *Melton v. Michigan Corrections Commission*, 2009 WL 722688 (E.D. Mich. Mar. 17, 2009), the plaintiff argued, as plaintiff does here, that his claims are "non-grievable" because they involved issues that affect the entire prisoner population or significant numbers of inmates, and thus he was not required to exhaust administrative remedies.  *Id.* at *3.  The court rejected that argument and noted that "[a] prisoner must pursue the administrative process even if it does not offer the precise relief that the prisoner seeks."  *Id.* (citing *Booth*, 532 U.S. at 741).  The Court stated that "[i]t stands to reason that a prisoner cannot forego the grievance process altogether, based on the belief that he would not be successful.  There is no futility exception to the exhaustion requirement."  *Id.* (citing *Booth*, 532 U.S. at 741 n.6). The *Melton* court thus held that, even if the issues the plaintiff sought to raise affected the entire population, his allegations that his grievance *would have been denied* on this basis was "woefully insufficient" and "actually demonstrate[d] the merit to the defendants' exhaustion argument" by showing that plaintiff *never* followed the MDOC grievance procedures."  *Id.*  Applying the court's reasoning

in *Melton* to this case, plaintiff was required to pursue the administrative grievance process, and cannot argue simply that she believes it would have been futile to do so.

Plaintiff submits that even if the alleged strip search events are grievable issues, defendants have not proved that she failed to exhaust the administrative remedies available to her. Undoubtedly defendants have the burden to show that plaintiff did not exhaust her available administrative remedies prior to filing suit.

Defendants dispute that plaintiff filed these grievances while she was at the Wayne County Jail, rather that these grievances were submitted for this lawsuit. (Dkt. 71, Pg ID 1175). Defendants challenge plaintiff's credibility as to her claims that the grievances were filed. The challenges consist of the arguments (1) that a search of the Wayne County Jail records did not disclose that plaintiff filed any grievances relating to stip searches (Dkt. 90, Pg ID 1872), (2) that plaintiff should not be believed due to her criminal history of convictions for offenses involving dishonesty or false statement (Dkt. 90, Pg ID 1874), (3) that plaintiff has given inconsistent statements regarding these alleged grievances (Dkt. 90, Pg ID 1875), (4) that plaintiff has made prior false statements to the MDOC about matters that are not directly related to the filing of the grievances (Dkt. 90, 1876), (5) that in order to believe plaintiff's testimony one would have to be conclude that defendants destroyed or lost all four grievances plaintiff claims to have filed and

there is no evidence of that (Dkt. 90, Pg ID 1878), (6) that plaintiff made false statements regarding attempting to make copies of the grievances at the Jail law library (Dkt. 90, Pg ID 1879), and (7) that plaintiff made false statements regarding bringing copies of the grievances with her from the Wayne County Jail to the MDOC when she was transferred there in March of 2012 (Dkt. 90, Pg ID 1879). Plaintiff's response to these credibility challenges included only the argument that defendants had not proved the grievances were not filed because no search was conducted of the log that was kept to record the filing of grievances. (Dkt. 91, Pg ID 1906).

With respect to the significance of the testimony of Mr. Pappas regarding the search of the Jail records for records of these alleged grievances, Mr. Pappas testified that he oversaw the Jail grievance system for periods of time and was familiar with it. (Dkt. 85, p. 128). In attempt to locate any grievances filed by plaintiff, Mr. Pappas reviewed a "spreadsheet log that is kept on every monthly grievance that is filed by every inmate." (Dkt. 85, p. 130). He also testified that he conducted a "manual search of each and every piece of paper of grievance that was filed ... ." (*Id.*) He testified that, based on this search, he did not find copies of the grievances plaintiff alleged she filed. (*Id.*)

On cross-examination, Mr. Pappas testified that when a grievance is received from an inmate an entry is made on a "grievance log book" by an

21

administrative secretary.  In Division III there is a "manual log book" and then

they "also log it electronically." (Dkt. 85, p. 178-79).  Mr. Pappas stated that in

conducting his record search he did not review the "physical grievance log book"

maintained by the administrative secretary. (Dkt. 85, p. 180).

Based on this record, this court finds that only Division III had a manual log

book that was kept by an administrative secretary and the data on the manual log

book was entered on to a "spreadsheet log book."  The inference drawn from this

testimony is that grievances at Divisions I and II are logged only on a spreadsheet

log and that a manual log book is maintained at Division III but then the data is

transferred to a spreadsheet log similar to the one for Divisions I and II.  The

spreadsheet log, based on this record, is a computer based record.

While Mr. Pappas admitted failure to review the manual log maintained by

the administrative secretary at Division III is a factor that can properly be used to

challenge his testimony on the contents of the Wayne County Jail records, there is

no evidence in this record to suggest that anything different appears on the manual

log such that additional information would be likely to be found there.  The

testimony indicates that a satisfactory search was done by Mr. Pappas of the

Wayne County Jail records that enables him to testify, in a persuasive way, that the

records of the Wayne County Jail include a record of all grievances filed at any of

the divisions of the Jail and that those records do not reflect any grievances filed

by plaintiff relating to strip searches.

Defendants also argue that plaintiff's testimony about filing grievances should not be believed because she has convictions for offenses that involve dishonesty or false statement.  Federal Rule of Evidence 609 provides that certain convictions can be used to impeach a witness.  Felony convictions and any conviction that involves dishonesty or false statement within ten years of the testimony of the witness can be used for impeachment.  The ten year period runs from the date of the conviction or the witness's release from confinement, whichever is later.  Fed.R.Evid. 609(b).  If the prior convictions are beyond the ten year period, the proponent of the evidence must meet certain criteria before evidence of the convictions is admissible for this purpose.

While plaintiff did not object to the evidence offered, the evidence offered still should meet the minimum requirements of the rule before it is considered by this court.  Here, plaintiff admitted to serving a sentence for retail fraud at the time of her testimony.  A retail fraud conviction has been viewed as a crime involving dishonesty or false statement. *United States v. Rodgers*, 1992 WL 107066, *5 (6th Cir. 1992); *see also United States v. Jose Castro-Ramirez*, 2010 WL 681274, *2 (E.D. Mich Feb. 23, 2010).  In that this prior conviction is within the permissible time period and involves a proper offense it can be considered for impeachment purposes.  The evidence regarding the other prior convictions, however, is not

similarly situated.  Plaintiff admitted to seven prior convictions for fraud "dating back to 1995" and two theft or larceny convictions without date.  (Dkt. 85, p. 24). The evidence simply does not establish, by admission or otherwise, that these convictions occurred withing the ten year time period permitted by Rule 609.  The single prior conviction for retail fraud will be considered for impeachment purposes but the other prior convictions will not be so considered.

A third claim by defendants is that plaintiff made prior inconsistent statements regarding the grievances and that inconsistent statements negatively impact plaintiff's credibility.  Unquestionably, inconsistent statements regarding material issues have a bearing on credibility.  Fed.R.Evid. 613.  Defendants assert that prior to the hearing plaintiff had represented that she did not have copies of the actual grievances filed with the Wayne County Jail because Jail authorities had not returned copies to her.  (Dkt. 85, p. 45).  During the hearing, plaintiff testified that she had copies of three of the four grievances with her all along because she made duplicate copies of the grievances and kept them with her when she went to the MDOC but, according to her, when she answered a question earlier about copies of the grievances she did not realize she had them.  She was not able to find the duplicate copy of the fourth grievance.  (Dkt. 85, p. 42).

Defendants characterize plaintiff's testimony in this regard as a "last - minute change of story that contradicted" earlier responses to discovery requests

and makes her claims of exhaustion less credible.  (Dkt. 90, p. 1876).  This court concludes that there is an inconsistency between what plaintiff had said earlier about having copies of the grievances and her testimony at the hearing.  While plaintiff attempts to explain the inconsistency by asserting she did not realize she had the duplicate copies when she answered the discovery requests because she could not find them, that explanation is not entirely satisfactory.  Her earlier response did not indicate she had even made duplicate copies and explained the absence of copies on the claim that the authorities never returned copies to her.  Additionally, her present claim that she had misplaced these duplicate copies in her property is not particularly persuasive.  The amount of property an inmate is able to keep in a prison cell cannot be very large.  While it is one thing to misplace a few sheets of paper in a house full of items, it is clearly something else to claim to misplace important documents among the modest amount of property maintained in a prison cell.

Another challenge made by defendants to plaintiff's credibility is the contention that she made intentionally false statements to the Michigan Department of Corrections when she went there following her stay in the Wayne County Jail.  (Dkt. 90, Pg ID 1876).  In one of her claimed grievances, plaintiff made reference to a prior sexual assault she was reminded of by the strip search she alleged.  (Dkt. 85, pp. 28-29).  Defendants introduced intake records from the

MDOC that contained biographical information regarding plaintiff.  Plaintiff denied that some of the information on the records was accurate and denied telling anyone that the information was true.  She did however acknowledge that she made an intentionally false statement regarding whether she was a sexual assault victim as a teenager.  She denied being a sexual assault victim claiming that she was concerned about her housing placement if the MDOC believed she was a sexual assault victim.  (Dkt. 85, p. 107).

While there is some evidence that plaintiff made prior untruthful statements to the MDOC intake personnel, she denied all of those untruthful statements except for the one regarding sexual assault.  Other than the sexual assault issue, the evidence of intentional false statement is not very persuasive where it is based only on the intake questionnaire.  However, plaintiff admitted making an intentionally false statement regarding a prior sexual assault based on her desire to be housed in one location over another.  Making an intentional false statement for the purpose of personal convenience or advantage suggests a willingness to bend the truth whenever the truth results in a less advantageous outcome.  Such a willingness does detract from plaintiff's credibility as to whether the grievances plaintiff claims were actually filed.

Defendants also attempt to impeach plaintiff's testimony regarding her testimony that she was unable to make copies of her grievances on the law library

copier because it was not working on the several occasions when she went there (Dkt. 90, Pg ID1879) and her testimony that she brought the duplicate copies of her grievances with her to the MDOC when she transferred there from the Wayne County Jail. (*Id*.) As to plaintiff's testimony that she went to the law library only to find that the copy machine was not working, thus explaining her hand written duplicate copies, defendants offered evidence, in the form of Jail records that track the whereabouts of inmates within the Jail, indicating that plaintiff never went to the law library while she was incarcerated at the Wayne County Jail in late 2011 and early 2012. Plaintiff testified unequivocally that she had gone to the law library and the copy machine was not working so she had to complete a duplicate copy of the grievance so that she would have a copy. (Dkt. 85, pp. 41, 60-62).

Plaintiff's testimony regarding going to the law library cannot be reconciled with the evidence offered by defendants that plaintiff never went to the law library while she was there during relevant time periods. (Dkt. 85, pp. 160-64). On this record, this court concludes that plaintiff falsely testified that she had been to the law library at the Jail during late 2011 and early 2012. The records of the Jail appear to be standard business records and therefore reliable and plaintiff would arguably have had a motive to fabricate that aspect of her testimony in order to provide an explanation for having a duplicate copy of the grievance, rather than a facsimile copy.

Plaintiff explained her possession of the duplicate copies of the grievances by stating that she had brought the copies with her from the Jail. (Dkt. 85, p. 38). Defendants offered evidence that an inmate cannot take anything with them when the transfer to the MDOC except for the clothes on his or her back. (Dkt. 85, p. 166). Again, this difference in the evidence cannot be reconciled. While this evidence is not as persuasive as to whether plaintiff testified falsely, it is sufficient to conclude that was the case as to this issue as well.

An additional factor relating to plaintiff's credibility is the fact that the claimed grievances were not on the official Wayne County Jail grievance form, rather they were all on a form that, according to Mr. Pappas, was not available and never used at Division I or II (he testified he searched back to 2008) and used in three of approximately 3,000 grievances that were filed in Division III during the time plaintiff was there in 2011 and 2012. (Dkt. 85, pp. 140-42). The fact that all of these alleged grievances were on the same, improper form is consistent with defendants' position that they were created after-the-fact with the intention to bolster the false claim that the grievances were actually filed which is required for exhaustion to be established.

Based on the above evidence, this court does not accept plaintiff's testimony that grievances were filed by her relating to strip searches at the Wayne County Jail during the period of November of 2011 to March of 2012. This

28

finding leads to the conclusion that plaintiff did not exhaust her administrative remedies prior to initiating the present litigation.

## IV.   Recommendation

Given the above conclusions, the undersigned **RECOMMENDS** that defendants' motion (Dkt. 62), construed as an unenumerated Fed. R. Civ. P. 12(b) motion to dismiss, be **GRANTED**.

Because plaintiff has filed an amended motion to certify the class (Dkt. 45), and has identified other potential class members, the undersigned also **RECOMMENDS** that plaintiff be given 30 days from the date the District Court addresses this report and recommendation to amend the complaint and substitute a new class representative.  If this cannot be accomplished, the amended complaint will be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

29

party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 22, 2015                              s/Michael Hluchaniuk
                                                Michael Hluchaniuk
                                                United States Magistrate Judge

## CERTIFICATE OF SERVICE

     I certify that on May 22, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel fo record.

s/Durene Worth
Acting in the absence of
Tammy Hallwood, Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
